UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

"IN ADMIRALTY"

| | |
|---|---|
| LAUDERDALE TOWING & SALVAGE, INC., a Florida corporation d/b/a SEA TOW FORT LAUDERDALE,<br><br>    Plaintiff,<br><br>v.<br><br>M/Y FOUR REAL, a 2013 60' Marquis with Hull Identification Number MQYLS006I213, its engines, generators, tender, tackle, equipment, furnishings, contents, and appurtenances, etc., *in rem*,<br><br>    Defendant. | Case No. 22-cv-61108 |

## VERIFIED COMPLAINT

Plaintiff, LAUDERDALE TOWING & SALVAGE, INC. d/b/a SEA TOW FORT LAUDERDALE ("SEA TOW"), by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files this Verified Complaint against M/Y FOUR REAL, a 2013 60' Marquis with Hull Identification Number MQYLS006I213, its engines, generators, tender, tackle, equipment, furnishings, contents, and appurtenances, etc. ("VESSEL"), and alleges:

### JURISDICTION, VENUE AND SPECIAL PLEADING REQUIREMENTS

1. This lawsuit is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. As such, this lawsuit is within the admiralty and maritime jurisdiction of the Court.

2. The facts giving rise to this lawsuit occurred in the Southern District of Florida, and, therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and other venue rules unique to maritime claims.

3. Pursuant to the Local Rules of the South District of Florida, specifically Local Rule E(3) entitled "Special Requirements for Salvage Actions," SEA TOW alleges the following information:

   a. Upon information and belief, the approximate value of the VESSEL, including its machinery and other contents, is not less than $1,300,000.00.

   b. In consideration of the salvage services rendered on behalf of the VESSEL, SEA TOW claims a salvage award in an amount not less than $196,000.00, exclusive of attorneys' fees, costs, and prejudgment interest.

   c. This lawsuit is filed on behalf of SEA TOW as the only salvage company that rendered salvage services on behalf of the VESSEL. A list of the salvage companies participating in the operation is attached hereto as Exhibit A.

4. This lawsuit is governed by the principles of the 1989 International Convention on Salvage, as supplemented by the General Maritime Laws of the United States.

**PARTIES**

5. Plaintiff, Lauderdale Towing & Salvage, Inc. d/b/a Sea Tow Fort Lauderdale, is a Florida corporation located at 3001 West State Road 84, Second Floor, Fort Lauderdale, Florida 33312. At all times material to this lawsuit, SEA TOW was engaged in the business of providing professional marine salvage services.

6. Defendant, M/Y FOUR REAL, is a 2013 60' Marquis with Hull Identification Number MQYLS006I213. The VESSEL is owned by Donald William Julian and Linda Ann

Julian. Upon information and belief, the VESSEL is located at 2400 N.E. 32nd Court, Lighthouse Point, Florida 33064.

## FACTS APPLICABLE TO ALL COUNTS

7. This lawsuit is filed without prejudice to SEA TOW's right to submit this dispute to arbitration, pursuant to the terms of the U.S. Open Form Salvage Agreement executed by Captain Peter Selmeci ("Salvage Agreement"). A copy of the Salvage Agreement is attached hereto as Exhibit B.

8. The purpose of this lawsuit is to provide security for (and, as required, satisfaction of) any salvage award which may issue in SEA TOW's favor by way of an arrest and seizure of the VESSEL in foreclosure of its maritime lien for salvage.

9. On April 15, 2022, at 9:43 a.m., Captain Peter Selmeci ("Captain Selmeci") called "MAYDAY" stating that the VESSEL was on fire in the vicinity of the Hillsboro Inlet and required immediate assistance.

10. Less than one minute later, SEA TOW arrived on scene and observed black smoke billowing from the VESSEL. All means of propulsion and navigation, including the engines and generators, were shut down by Captain Selmeci and the VESSEL was "DEAD SHIP" in the middle of the shipping channel and drifting toward a rock and coral reef.

11. SEA TOW approached the VESSEL from its port side and instructed Captain Selmeci to keep the engines and generators turned off and all hatches closed to prevent the fire reported by the captain from spreading.

12. At significant risk to its own equipment, SEA TOW took the VESSEL under tow and contacted Broward County Fire Rescue and requested that fire department meet them at the Hillsboro Inlet Marina.

13. Less than four minutes later, SEA TOW arrived at the Hillsboro Inlet Marina and transferred the VESSEL to the fire department waiting at the dock. Captain Selmeci and one passenger, Linda Julian, were assisted off the VESSEL by the fire department.

14. The voluntary and successful actions taken by SEA TOW prevented the VESSEL, which was "DEAD SHIP" in the middle of a shipping channel from drifting onto the rock and coral reef causing significant damage or destruction to the VESSEL and potential damage to the surrounding environment.

15. The voluntary and successful actions taken by SEA TOW eliminated the perceived risk of fire by transporting the VESSEL to the fire department (whom SEA TOW contacted) so that an immediate investigation could be performed.

16. After the foregoing actions were taken, Captain Selmeci voluntarily signed the Salvage Agreement acknowledging that salvage services were furnished by SEA TOW on a "no cure, no pay" basis. A copy of the Salvage Agreement is attached hereto as <u>Exhibit B</u>.

17. On or about May 11, 2022, SEA TOW sent the vessel owner and/or insurer a detailed narrative of its efforts and demanded a salvage award for its voluntary and successful actions. This demand was based upon the factors set out in the 1989 International Convention on Salvage and in the U.S. Supreme Court's decision in *The Blackwall*, 77 U.S. 1 (1869), and the General Maritime Law of the United States of America.

18. As of this date, neither the vessel owner nor the vessel insurer has paid SEA TOW for its services. Likewise, demands for substitute security in the form of a bond or letter of undertaking have also been ignored.

19. Given the lack of communication, SEA TOW possesses a reasonable belief that its ability to obtain security for its salvage claim could be threatened by the vessel owner or

vessel insurer's lack of attentiveness and the possibility that the vessel could be removed from the jurisdiction or secreted away.

20. Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, 201-208, 301-307, a party to an arbitration agreement may begin its proceeding by libel (filing a complaint) and seizure of the vessel or other property of the other party under the Supplemental Admiralty Rules. The Court has jurisdiction to direct the parties to proceed with the arbitration and retain jurisdiction to enter its decree once the award is issued pursuant to 9 U.S.C. § 8.

21. Therefore, once the VESSEL is arrested or adequate substitute security in the form of a bond or letter of undertaking is received, SEA TOW intends to file a motion to compel arbitration, and nothing herein waives or is intended to waive the arbitration clause set forth in the U.S. Open Form Salvage Agreement executed by Captain Selmeci.

## COUNT I
## CLAIM FOR MARITIME SALVAGE AWARD

22. SEA TOW adopts and reasserts the allegations contained in Paragraphs 1-21 of the Verified Complaint above.

23. The salvage services provided by SEA TOW resulted in the successful removal of the VESSEL from its position of marine peril.

24. The salvage services provided by SEA TOW prevented significant damage or destruction to the VESSEL.

25. The salvage services provided by SEA TOW prevented damage to the surrounding environment.

26. The salvage services provided by SEA TOW prevented injury to the crew and other passengers on board the VESSEL.

27. The salvage services provided by SEA TOW were voluntary and successful.

28. The salvage services provided by SEA TOW were of a high order.

29. Pursuant to the General Maritime Law of the United States of America and the Salvage Agreement attached hereto as <u>Exhibit B</u>, SEA TOW is entitled to a liberal salvage award for the voluntary and successful salvage services provided to the Vessel.

## COUNT II
## CLAIM FOR EQUITABLE UPLIFT

30. SEA TOW adopts and reasserts the allegations contained in Paragraphs 1-21 of the Verified Complaint above.

31. SEA TOW is a professional marine salvage company that maintains emergency response vessels and other salvage equipment capable of providing marine salvage services at all times of the year in Broward County, Florida.

32. SEA TOW invests significant resources into maintaining its equipment and training its personnel so that the salvage services provided by SEA TOW are of the highest order.

33. Pursuant to the General Maritime Law of the United States of America and the Salvage Agreement attached hereto as <u>Exhibit B</u>, a professional salvor like SEA TOW is entitled to an equitable uplift on any salvage award awarded herein in an amount not less than five percent (5%) of the award.

## COUNT III
## CLAIM FOR PREJUDGMENT INTEREST, COSTS, AND ATTORNEYS' FEES

34. SEA TOW adopts and reasserts the allegations contained in Paragraphs 1-21 of the Verified Complaint above.

35. Pursuant to the General Maritime Law of the United States of America and the Salvage Agreement attached hereto as <u>Exhibit B</u>, SEA TOW is entitled to prejudgment interest from the date of the salvage, costs, and reasonable attorneys' fees in connection with this action.

**WHEREFORE**, the Plaintiff, Lauderdale Towing & Salvage, Inc. d/b/a Sea Tow Fort Lauderdale, respectfully requests the following:

A. That process in due form of law, according to the rules and laws of this Court in causes of admiralty and maritime jurisdiction issue against the VESSEL, its engines, generators, tender, tackle, equipment, furnishings, electronics, contents, and appurtenances, etc., *in rem*;

B. That all persons having or claiming any interest therein may be cited to appear and answer the aforesaid matters;

C. That SEA TOW be decreed to have a lien upon the VESSEL as described herein and that such lien be foreclosed in accordance with the law and that the VESSEL be condemned and sold in payment of the amount due and all other such sums owed;

D. That SEA TOW be permitted to bid its judgment against the VESSEL at a United States Marshal's Sale;

E. That this Court further award SEA TOW the total amount due, plus pre- and post-judgment interest and costs, and that Lauderdale Towing be permitted to recover the same from the Vessel, *in rem*; and,

F. That this Court direct the parties to proceed with the arbitration and retain jurisdiction to enter its decree once the arbitration award is issued pursuant to 9 U.S.C. § 8.

G. That this Court grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Date:  June 9, 2022 | Respectfully submitted, |
| | FIORILLI LAW GROUP, P.A.<br>Attorneys for Plaintiff, Lauderdale Towing & Salvage, Inc. d/b/a Sea Tow Fort Lauderdale<br>3001 West State Road 84, Third Floor<br>Fort Lauderdale, Florida 33312<br>Office: (954) 797-7719<br>Direct: (561) 727-9337<br>E-mail: justin@fiorillilaw.com<br>E-mail: service@fiorillilaw.com |
| | */s/ Justin S. Fiorilli*<br>**JUSTIN S. FIORILLI, ESQ.**<br>FL Bar No. 111481 |

## VERIFICATION

STATE OF:     FLORIDA     )
                                         ) ss:
COUNTY OF:   BROWARD   )

I, **MICHELE KERRIGAN**, being duly sworn, deposes and says:

1. I am the Director of Operations and Marketing Director for Lauderdale Towing & Salvage, Inc. d/b/a Sea Tow Fort Lauderdale and am authorized to make this Verification.

2. Under penalty of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true and correct.

3. As for statements made based upon information and belief, I declare under penalty of perjury that the facts stated in it are true to the best of my knowledge and belief.

4. The source of my knowledge and the grounds for my belief as to all matters stated in the Verified Complaint are documents maintained in my office, my communications with our personnel and my own personal knowledge.

_____
MICHELE KERRIGAN
Director of Operations and Marketing Director

The foregoing instrument was acknowledged before me by physical presence on this 9th day of June, 2022, by Michele Kerrigan, who is personally known to me, in her capacity as Director of Operations and Marketing Director on behalf of Lauderdale Towing & Salvage, Inc. d/b/a Sea Tow Fort Lauderdale.

_____
Signature of Notary



JOSEPH DONOFRIO
Notary Public-State of Florida
Commission # HH 139551
My Commission Expires
June 27, 2025